Priscilla C. HENSEL, Petitioner,

v.

OFFICE OF the CHIEF ADMINISTRATIVE HEARING OFFICER, Executive Office for Immigration Review, Respondent.

State of Oklahoma ex rel. the Board of Regents of the University of Oklahoma, Intervenor,

Oklahoma City Veterans Affairs Medical Center, Real Party in Interest.

No. 93–9551.

United States Court of Appeals, Tenth Circuit.

Sept. 16, 1994.

Rehearing Denied Nov. 21, 1994.

Robert V. Varnum (Linda G. Kaufmann, with him on the briefs), of White, Coffey, Galt & Fite, Oklahoma City, OK, for petitioner.

Matthew M. Collette, Atty., Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC (Frank W. Hunger and Stuart M. Gerson, Asst. Attys. Gen., and Michael Jay Singer, Atty., Appellate Staff, Civ. Div., Dept. of Justice, Washington, DC, with him on the briefs; Stephen E. Alpern, Associate Gen. Counsel, and Suzanne H. Milton, Atty., Office of Labor Law, U.S. Postal Service, Washington, DC, of counsel), for respondent.

Susan Gail Seamans, Oklahoma City, OK (Fred Gipson, Kurt F. Ockershauser, and Lawrence E. Naifeh, Norman, OK, with her on the brief), for intervenor.

Before EBEL and SETH, Circuit Judges, and MECHEM, District Judge *.

SETH, Circuit Judge.

Petitioner, Priscilla Hensel, brought a discrimination claim pursuant to 8 U.S.C. § 1324b of the Immigration Reform and Control Act ("IRCA") against Respondents University of Oklahoma Health Sciences Center ("OU") and Oklahoma City Veterans Affairs Medical Center ("VAMC") claiming that she was not hired as a staff anesthesiologist because she was a United States citizen.

Petitioner initially filed a claim against VAMC with the Office of Special Counsel for Unfair Immigration Related Employment Practices. It then notified Petitioner that it would not pursue her complaint.

She then filed two separate complaints directly with the Administrative Law Judge of the United States Department of Justice Ex-

---

* Honorable Edwin L. Mechem, United States District Judge for the District of New Mexico, sitting by designation.

ecutive Office for Immigration Review (ALJ). The ALJ consolidated the two complaints and set a hearing date. Prior to the hearing on the merits of the case, the ALJ heard oral argument on VAMC's Motion to Dismiss/Motion for Summary Decision and OU's Motion for Summary Judgment and thereafter granted the motions in Respondents' favor. The ALJ ruled in his order that Petitioner had not established a prima facie case of discrimination, finding that she had not properly applied for the position, and that she was not qualified for the position she sought. Petitioner filed a Petition for Review from this order dismissing her claims.

VAMC, a federal entity connected with the Department of Veterans Affairs, serves as a teaching hospital associated with the medical school, OU, under an Agreement of Affiliation. The Chairman of the Department of Anesthesiology at OU had hired Petitioner and assigned her to Oklahoma Memorial Hospital. After her first day in the operating room, Petitioner wrote a note to the Chairman expressing an interest in transferring to VAMC. She followed this with a letter requesting to apply for a position at VAMC. A few days later, Petitioner submitted a letter of resignation, effective one month from that date, claiming that the working conditions at Oklahoma Memorial Hospital were not tolerable for her. After she turned in her resignation, she again requested to be transferred to VAMC and was told that she must apply for the position. During the following months, OU assigned two British subjects to work at VAMC. Petitioner contends that OU hired staff anesthesiologists who were not United States citizens, even though she had applied and was qualified for the position.

The ALJ listed the elements Petitioner needed to prove in order to prevail as follows:

"1. That she belongs to a protected class;

"2. That she applied and was qualified for a job for which either the [VAMC] or [OU] or both were seeking applicants;

"3. That, despite her qualifications, she was rejected; and

"4. That, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

ALJ Order at 12 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668; *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir.)). The ALJ found that Petitioner never properly applied with OU; therefore, she did not present a prima facie case of discriminatory hiring practices by OU. With respect to VAMC, the ALJ determined that she had applied with VAMC, but failed to meet an essential qualification for the job which was a faculty appointment at OU.

In her Petition for Review Petitioner asserts that the ALJ erred in granting summary judgment. First, she claims that the ALJ erred as a matter of law because there were genuine issues of material fact in dispute. Second, she claims that the ALJ erred by not viewing the facts in the light most favorable to her as the non-moving party. Third, she argues specifically that the ALJ erred in concluding that no reasonable juror could find that she applied for the position at OU and that she was not qualified for the position.

Respondents have raised a preliminary jurisdictional question of immunity and we must first determine whether VAMC is protected from suit by the principles of sovereign immunity and whether OU is protected by the Eleventh Amendment. The Court in *FDIC v. Meyer*, — U.S. —, —, 114 S.Ct. 996, 998, 127 L.Ed.2d 308 (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058), said:

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'"

(Citations omitted.) In *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580, the Court said:

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."

Likewise, the determination of whether immunity protects the state from suit is a preliminary question of jurisdiction.

The ALJ did not address the immunity issues in his order; however, both OU and VAMC raised the immunity issue in their respective motions. This court may base its decision "on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon" by the court below. *Griess v. State of Colo.*, 841 F.2d 1042, 1047 (10th Cir.) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.)).

### OU—Eleventh Amendment Immunity

OU contends that the ALJ and this court do not have jurisdiction because under the Eleventh Amendment, a citizen cannot sue a state absent that state's consent. We have recognized that under Oklahoma law, the Board of Regents of the University is an arm of the state and that a suit against the University is a suit against the Board of Regents. *Seibert v. Univ. of Okla. Health Sciences Center*, 867 F.2d 591, 594–95 (10th Cir.). Therefore, OU, as part of the University, is an arm of the state for Eleventh Amendment purposes. Oklahoma has not waived its immunity. Okla.Stat.Ann. tit. 51, § 152.1(B) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). Consequently, OU is immune unless Congress has specifically eliminated Oklahoma's privilege.

Petitioner claims that Congress intended to abrogate the Eleventh Amendment immunity by enacting 8 U.S.C. § 1324b. This section states that "[i]t is an unfair immigration-related employment practice for a person or other entity to discriminate" based on an individual's national origin or because an individual is a citizen or national of the United States.

In order for the state to be subject to suit, Congress must have made "its intention unmistakably clear in the language of the statute." *See Dellmuth v. Muth*, 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171). "[E]vidence of congressional intent must be both unequivocal and textual.... Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment." *Id.* 491 U.S. at 230, 105 S.Ct. at 2401.

Given the explicitness Congress has employed with respect to other statutes, Petitioner has not shown that Congress intended to abrogate the Eleventh Amendment in the IRCA. *See, e.g., Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n. 2, 456, 96 S.Ct. 2666, 2668 n. 2, 2671, 49 L.Ed.2d 614 (Eleventh Amendment abrogated in Title VII cases because "person" is defined to include "governments, governmental agencies, [and] political subdivisions" and "employee" includes individuals "subject to the civil service laws of a State government, governmental agency or political subdivision"); *cf. Dellmuth*, 491 U.S. at 230–32, 109 S.Ct. at 2401–03 (no abrogation evident in the Education of the Handicapped Act even though it contains frequent references to states). The Court in *Dellmuth*, at 230–31, 109 S.Ct. at 2401–02, said: "We find it difficult to believe that the 94th Congress, taking careful stock of the state of Eleventh Amendment law, decided it would drop coy hints but stop short of making its intention manifest." Here, there is no textual support by definition or even reference that a "person" or "entity" includes the state. Absent explicit language in the IRCA itself, we do not find that these terms were intended to subject the state to suit in federal court.

Furthermore, the Eleventh Amendment itself is not mentioned in the IRCA. *See, e.g.,* American with Disabilities Act, 42 U.S.C. § 12202, which states: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." Absent textual support, we cannot conclude that Congress intended to abrogate Eleventh Amendment immunity in the IRCA.

Petitioner also claims that immunity does not apply because she is asking for prospective injunctive relief in that she wants OU to hire her. *See Edelman v. Jordan*, 415

U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662; *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714. OU counters with *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, — U.S. —, 113 S.Ct. 684, 121 L.Ed.2d 605, claiming that even injunctive relief against a state is barred. In *Puerto Rico Aqueduct*, the Court stated that *Ex parte Young* allows for prospective relief only "against state officials in federal court challenging the constitutionality of official conduct enforcing state law" and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct*, — U.S. at —, 113 S.Ct. at 688.

In response, Petitioner claims *Puerto Rico Aqueduct* is inapplicable because state law determines whether the University is an arm of the state. Since Oklahoma claims OU is an arm of the state, Oklahoma can frame the boundaries of its immunity. Petitioner claims that the Oklahoma Supreme Court has held that the Board of Regents serves as an arm of the state where monetary damages are involved, but can be enjoined. *See Seibert*, 867 F.2d at 595; *Gay Activists Alliance v. Bd. of Regents*, 638 P.2d 1116, 1123 (Okla.). Essentially, OU would be enjoined from straying from its hiring policies and her salary would be a permissible consequence. *See Edelman*, 415 U.S. at 667–68, 94 S.Ct. at 1357–58 (allowing state expenditures stemming from prospective injunctive relief).

■ Although the determination of what constitutes an arm of the state for certain purposes is based on state substantive law, the scope of Eleventh Amendment immunity is a matter of federal law. In keeping with the holding in *Puerto Rico Aqueduct*, this court has stated that "[i]f the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability." *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir.). States and state agencies "retain their immunity against all suits in federal court." *Puerto Rico Aqueduct*, — U.S. at —, 113 S.Ct. at 689. Consequently, no federal jurisdiction exists and Petitioner's claim against OU under the IRCA is barred.

## VAMC—Federal Sovereign Immunity

■ VAMC argues that it has not waived its federal sovereign immunity; therefore, Petitioner's claim against VAMC must be dismissed. "The United States may not be sued without its consent.... [W]aiver of sovereign immunity must be strictly construed in favor of the sovereign...." *Fostvedt v. United States*, 978 F.2d 1201, 1202 (10th Cir.) (citation omitted). "As in the Eleventh Amendment context, the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text." *United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181, (citation omitted). Petitioner has not demonstrated that the IRCA contains explicit and unambiguous language that waives the immunity of the United States. *See, e.g.*, The Clean Water Act, 33 U.S.C. § 1365(a), which states: "any citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States...." Thus absent clear language, the United States is not subject to suit under the IRCA.

■ Petitioner argues that if no waiver exists, a remedy could be fashioned that would not implicate sovereign immunity. However, sovereign immunity protects the United States against judgments that would require an expenditure from public funds, that interfere with public administration or that would "restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (quoting *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628).

Petitioner responds that if the remedy were that OU must hire Petitioner and place her at VAMC, VAMC would not be expending federal funds. Furthermore, the court would not be interfering with public administration nor forcing the VAMC to act and immunity would not apply. VAMC would merely be honoring a contract to utilize OU doctors under the Agreement of Affiliation as it always has. However, we held in the prior section that OU is immune from suit; therefore, no federal court can order OU to hire Petitioner and expend state funds. Petition-

er's circular reasoning to construct a remedy is not possible regardless of whether such an order would be compelling VAMC to act.

The ALJ lacked jurisdiction to hear Petitioner's claims against OU and VAMC as they are protected by the doctrines of Eleventh Amendment immunity and sovereign immunity, respectively. We need not reach the remaining issues raised on appeal.

Accordingly, IT IS ORDERED that Petitioner's claims against OU and VAMC under the IRCA be DISMISSED.